UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-4582 (DSD/SRN)

Firstcom, Inc., a Minnesota
corporation,

       Plaintiff,

v.                                  **ORDER**

Qwest Communications, a
Colorado corporation,

       Defendant.

    David E. Wandling, Esq. and Wandling Law Group, LLC, 5105 Thimsen Avenue, Suite 200, Minnetonka, MN 55345, counsel for plaintiff.

    Marianne D. Short, Esq., Heather D. Redmond, Esq., Theresa M. Bevilacqua, Esq. and Dorsey & Whitney LLP, 50 South 6th Street, Suite 1500, Minneapolis, MN 55402 and Jason D. Topp, Esq., Qwest, 200 South 5th Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon plaintiff's objections to the report and recommendation of United States Magistrate Judge Susan Richard Nelson dated July 30, 2007. In her report, the magistrate judge recommended that defendant's motion to dismiss be granted. For the following reasons, the court adopts the report and recommendation in its entirety.

**BACKGROUND**

    This is a dispute about telecommunication rates between plaintiff Firstcom, Inc. ("Firstcom") and defendant Qwest

Corporation ("Qwest"). Qwest is an incumbent local exchange carrier ("ILEC") that, under the Telecommunications Act of 1996 ("TCA"), must provide to competitive local exchange carriers ("CLEC") like Firstcom the same pricing and contract terms it offers other carriers. See 47 U.S.C. §§ 251-252. By mandating the unbundling of network elements and requiring ILECs to sell their services wholesale at regulated rates, the TCA sought to increase competition in the telecommunications industry. See Howard A. Shelanski, Adjusting Regulation to Competition: Toward A New Model fo U.S. Telecomm. Policy, 24 Yale J. on Reg. 55, 63 (2007). Firstcom, a Minnesota corporation, used the TCA to enter into interconnection agreements with Qwest and resell certain telephonic services as a CLEC. Despite the increased access to competitive prices, Firstcom did not remain profitable and ceased its normal business operations in 2001. At that time, Firstcom sold its remaining assets to Al Jaffe & Associates ("AJA"), and in 2002, Firstcom formally dissolved. AJA later assumed the Firstcom name.

In 2004, twelve of Firstcom's former shareholders filed an action against Qwest related to "secret" interconnection agreements between Qwest and two CLECs that terminated in 2002. The shareholders alleged promissory estoppel, fraudulent misrepresentation and violations of the TCA and the Minnesota Telecommunications Act ("MTA"). After two years of discovery and motion practice, Judge Ann D. Montgomery granted summary judgment

in favor of Qwest. In her September 18, 2006, order, Judge Montgomery determined that AJA purchased Firstcom's legal rights along with its other assets, leaving the shareholders without standing. See Firstcom, Inc. v. Qwest Corp., No. 04-995, 2006 WL 2666301, at *5-6 (D. Minn. Sept. 18, 2006). The shareholders did not appeal.

On November 21, 2006, AJA - under the Firstcom mantle - filed this action against Qwest asserting the same claims as the 2004 lawsuit and adding a claim of negligence. Qwest moved to dismiss the action, and Magistrate Judge Nelson recommends that the motion be granted. As to Firstcom's federal claim, the magistrate judge found that it is time-barred and that the statute of limitations should not be equitably tolled. The magistrate judge also determined that the MTA did not create a private right of action. Finally, the magistrate judge found that federal law preempted Firstcom's alleged state law claims. Firstcom objects to these conclusions.

## DISCUSSION

The court makes a de novo determination as to the portions of the magistrate judge's report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b). In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all facts alleged in

the complaint and draws all reasonable inferences in plaintiff's favor.  Phipps v. F.D.I.C., 417 F.3d 1006, 1010 (8th Cir. 2005).

**I.   Equitable Tolling**

Firstcom objects to the magistrate judge's recommendation that its federal claim is time-barred by the TCA's two-year statute of limitations and argues that it is entitled to equitable tolling. Equitable tolling is appropriate "only where the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. 1990).  The doctrine is "exceedingly narrow" and applies only when "extraordinary circumstances" beyond a plaintiff's control prevent timely filing.  Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001).

Firstcom maintains that equitable tolling is appropriate because AJA was not aware of its legal rights to bring this action until Judge Montgomery's September 2006 decision.  It further argues that AJA did not learn of the facts supporting its claims until after September 2006.  These circumstances, however, are not extraordinary.  While Judge Montgomery's decision clarified that Firstcom's former shareholders did not possess the legal authority to file an action against Qwest, her order did not grant the right to file for the first time to AJA.  Instead, it merely confirmed that AJA had owned the legal rights of Firstcom since its purchase of Firstcom assets in 2001.  See Firstcom, Inc. v. Qwest Corp., No. 04-995, 2006 WL 2666301, at *5-6 (D. Minn. Sept. 18, 2006).

Moreover, AJA has admitted that it knew about the proceedings no later than 2002, and it refused to join in the 2004 litigation before Judge Montgomery. Therefore, AJA had appropriate notice, and the circumstances causing Firstcom to miss timely filing were not out of AJA's hands. For these reasons, the court finds that the magistrate judge properly concluded that the doctrine of equitable tolling does not apply to plaintiff's time-barred federal claims.

**II.   Minnesota Telecommunications Act**

Firstcom objects to the magistrate judge's conclusion that the MTA does not provide a private cause of action. While acknowledging that the issue is one of first impression in Minnesota, Firstcom argues that at the least the MTA implicitly creates a cause of action.

The MTA's "Competitive enforcement; administrative penalty orders" section provides that "[n]othing in [the] section affects the ability of a telephone company, telecommunications provider, telecommunications carrier, or subscriber to bring a private cause of action in court against a provider of local exchange telephone service based on conduct for which a penalty is imposed under this section." Minn. Stat. § 237.462, subdiv. 11. The court agrees with the magistrate judge's determination that subdivision 11 is merely a savings clause that does not grant a private cause of action. However, even if the MTA did imply a private cause of

action, Firstcom would have no recourse based on the MTA. An expired statute cannot provide the basis for a cause of action. See Granville v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1, 732 N.W.2d 201, 208-09 (Minn. 2007); see also State ex rel. Bennett v. Brown, 12 N.W.2d 180, 181 (Minn. 1943) (discussing effect of law's repeal on claim). The MTA expired on August 1, 2006 - more than three months before plaintiff filed its complaint. Accordingly, Firstcom could not pursue a cause of action, if one existed, under the MTA. For these reasons, the court adopts the magistrate judge's conclusion that Firstcom cannot pursue an MTA claim.

**III.  Preemption**

Firstcom objects to the magistrate judge's recommendation that federal law preempts its remaining state law claims. The United States Constitution's Supremacy Clause gives Congress authority to preempt state law. U.S. Const. art. VI, cl. 2; La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368 (1986). The TCA does not completely preempt state law in the field of telecommunications. See Qwest Corp. v. Scott, 380 F.3d 367, 372 (8th Cir. 2004). However, federal preemption occurs when there is conflict between federal and state law. La. Pub. Serv. Comm'n, 476 U.S. at 368-69; Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n, 290 F. Supp. 2d 993, 997 (D. Minn. 2003). Preemption is compelled "whether Congress' command is explicitly stated in the statute's language or

6

implicitly contained in its structure and purpose." Morales v. Trans World Airlines Inc., 504 U.S. 374, 383 (1992). Thus, federal law impliedly preempts state law where it is "impossible for a private party to comply with both state and federal requirements." Sprietsma v. Mercury Marine, 537 U.S. 51, 64 (2002).

The TCA provides a two-year statute of limitations for "all complaints against carriers for recovery of damages not based on overcharges" and actions at law "for recovery of overcharges." 47 U.S.C. § 415. The statute of limitations for Firstcom's state law promissory estoppel, fraudulent misrepresentation and negligence claims, however, is six years. Because these state claims fall within the TCA's broad definition of claims against carriers - that is, because they are actions at law related to the recovery of overcharges as defined by 47 U.S.C. § 415(c) - they must be filed within two years from the time the cause of action accrues.[1] See id. To the extent that the statute of limitations for the state law claims conflicts with the TCA's two-year statute of limitations, the state law claims are impliedly preempted.

In the alternative, the state law claims are preempted because they are essentially federal claims. A "claim arises under federal

---

[1] Although pleaded as fraudulent misrepresentation, negligence and promissory estoppel, Firstcom's state law claims are at base attempts to recover overcharges. Each focuses on Qwest's "secret" interconnection agreements and its alleged overcharging of Firstcom. Accordingly, each falls within the scope of § 415(c) and its two-year statute of limitations.

law when a right created by federal law is an essential element of the plaintiff's action." MCI Telecomms. Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir. 1992). Here, federal law grants Firstcom the right to enter into an interconnection agreement on the same terms as other telecommunications providers. See 47 U.S.C. § 252(i). As the magistrate judge correctly explained, Firstcom's state law claims arise from that federally created right. Cf. AT&T Commc'ns, 2007 WL 978091, at *2 (common law claims not preempted where they rely on both state and federal laws). Moreover, at oral argument before the magistrate judge, Firstcom could not explain how its state law claims were separate and distinct from its federal claim. (Tr. at 19, 26-27.) Indeed, the claims are not distinct. All are derived from the interconnection agreement, a type of contract created by the TCA. Accordingly, the claims arise under federal law and are barred by the TCA's two-year statute of limitations.

For these reasons, after a de novo review of the motions, files and administrative record in this matter, the court adopts the report and recommendation of the magistrate judge in its entirety.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that defendant Qwest Corporation's motion to dismiss [Doc. No. 2] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 27, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court
